## LUCY GRIGNANO *v.* CITY OF MILFORD
### (AC 27474)

Bishop, DiPentima and Mihalakos, Js.

---

Argued November 26, 2007—officially released April 1, 2008

*Marc J. Ubaldi,* for the appellant (substitute plaintiff).

*Thomas R. Gerarde,* with whom, on the brief, was *Alan R. Dembiczak,* for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The substitute plaintiff, Vincent Grignano, executor of the estate of Lucy Grignano,[1] appeals

---

[1] The original plaintiff, Lucy Grignano, died during the pendency of this appeal. On July 20, 2007, we granted a motion to substitute Vincent Grignano as a party plaintiff.

from the summary judgment rendered by the trial court in favor of the defendant municipality, the city of Milford. The substitute plaintiff claims that the court improperly concluded that the plaintiff's personal injury claim is barred by the doctrine of governmental immunity, pursuant to General Statutes § 52-557n. We affirm the judgment of the trial court.

On July 2, 2004, the plaintiff brought this personal injury action against the defendant. In her complaint, the plaintiff alleged that on August 29, 2003, she tripped over an uneven patio stone and sustained injuries while lawfully present as a public invitee of the defendant on property located at 37 Helwig Street in Milford, also known as Milford Landing. She further alleged that the negligent acts or omissions of the defendant, or its officers, agents or employees acting within the scope of their official duties, caused her injuries. Specifically, the plaintiff alleged that the defendant negligently constructed the patio, failed to inspect the patio for defects, failed to repair the defective stone and failed to warn her of the existence of the defective stone. In response, the defendant denied liability and claimed, by way of special defense, that the plaintiff's action was barred by the governmental immunity provided under § 52-557n. On September 7, 2005, the defendant filed a motion for summary judgment on its special defense, which the court granted in a written memorandum of decision on February, 27, 2006. This appeal followed.

We begin by setting forth the standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for

summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Internal quotation marks omitted.) *McKinney* v. *Chapman*, 103 Conn. App. 446, 451, 929 A.2d 355, cert. denied, 284 Conn. 928, 934 A.2d 243 (2007). "A material fact is a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Stokes* v. *Lyddy*, 75 Conn. App. 252, 257, 815 A.2d 263 (2003).

The plaintiff claimed that the defendant's negligence caused her injuries. "The essential elements of a cause of action in negligence are well established: duty;

breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails." (Internal quotation marks omitted.) *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 711, 927 A.2d 312, cert. denied, 284 Conn. 927, 934 A.2d 243 (2007).

"The status of an entrant on another's land, be it trespasser, licensee or invitee, determines the duty that is owed to the entrant while he or she is on a landowner's property." *Salaman* v. *Waterbury*, 246 Conn. 298, 304–305, 717 A.2d 161 (1998). "A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public." (Internal quotation marks omitted.) *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 320, 819 A.2d 844 (2003). "A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover. . . . An occupier of land is chargeable with constructive notice of defects when dealing with invitees. . . . The determinative question is whether the defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have discovered it and remedied it. . . . Thus, to establish liability for an injury caused by a [defect on the landowner's premises], a plaintiff must establish that the landowner had either actual or constructive notice of the . . . defective condition." (Citations omitted; internal quotation marks omitted.) *McDermott* v. *Calvary Baptist Church*, 68 Conn. App. 284, 294–95, 791 A.2d 602 (2002), aff'd, 263 Conn. 378, 819 A.2d 795 (2003).

When negligence is alleged against a municipality, our Supreme Court has stated that "[a] municipality

itself was generally immune from liability for its tortious acts at common law . . . . [H]owever, that governmental immunity may be abrogated by statute. . . . General Statutes § 52-557n (a) (1) provides in relevant part: Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . [T]his language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents," except under the circumstances set forth in subsection (a) (2) (B). (Citation omitted; internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 47–48, 881 A.2d 194 (2005).

General Statutes § 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Because the parties in the present matter assume that the immunity provided by § 52-557n (a) (2) (B) is identical to a municipal employee's qualified immunity for discretionary acts at common law, we also assume, without deciding, that § 52-557n (a) (2) (B) codifies the common law. See *Martel* v. *Metropolitan District Commission*, supra, 275 Conn. 48.

Under the common law, "a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed

wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment." (Citation omitted; internal quotation marks omitted.) Id., 48–49. "If by statute or other rule of law the official's duty is clearly ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance." *Shore* v. *Stonington*, 187 Conn. 147, 153, 444 A.2d 1379 (1982). "[M]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, supra, 275 Conn. 49; see also *Blake* v. *Mason*, 82 Conn. 324, 327, 73 A. 782 (1909) (ministerial act is one which person performs in given state of facts, in prescribed manner, in obedience to mandate of legal authority, without regard to or exercise of own judgment on propriety of act being done).

Our Supreme Court has explained the policy rationale for governmental immunity. "Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.) *Durrant* v. *Board of Education*, 284 Conn. 91, 105–106, 931 A.2d 859 (2007).

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally

a question of fact for the fact finder . . . there are cases where it is apparent from the complaint." (Internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, supra, 275 Conn. 49. "[T]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions *necessarily* involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 51 n.8.

Against this legal backdrop, the pivotal question we must resolve is whether the court properly concluded that the defendant's duties to inspect the premises, to maintain the premises in a reasonably safe condition and to warn invitees of the existence of an unsafe condition were discretionary rather than ministerial in nature, thereby sheltering the defendant under the umbrella of immunity provided by § 52-557n (a) (2) (B). The substitute plaintiff claims that the court's conclusion was improper because two city ordinances removed all discretion from the defendant's performance of its duties to inspect, maintain and warn. The defendant argues that those ordinances do not dictate the " 'prescribed manner' in which inspection, maintenance and the issuance of warnings are to be performed." The court, in siding with the defendant, determined that "the ordinances cited do not prescribe the manner in which [the defendant's] facilities are to be kept safe. While § 16-173 [of the Milford Code of Ordinances] does specifically provide what is to be done once a structure is found to be unsafe, the manner in which such determination is made requires the exercise

of discretion." Although we agree with the court's statements, we disagree with the court's implication that the discretionary nature of the predicate act of inspection rendered the subsequent act of warning also discretionary. We conclude, however, that because there is no evidentiary foundation for the plaintiff's assertion that the defendant had notice of a defect, the defendant had no duty to perform its ministerial warning function. Accordingly, the court properly rendered summary judgment in favor of the defendant.

In general, the exercise of duties involving inspection, maintenance and repair of hazards are considered discretionary acts entitled to governmental immunity. See *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989) (defendants' acts discretionary in nature because what constitutes reasonable, proper or adequate inspection involves exercise of judgment); *Segreto* v. *Bristol*, 71 Conn. App. 844, 857–58, 804 A.2d 928 (city's allegedly negligent design and maintenance of stairwell was discretionary because determinations of what is reasonable or proper under particular set of circumstances necessarily involve exercise of judgment), cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002). A municipality necessarily makes discretionary policy decisions with respect to the timing, frequency, method and extent of inspections, maintenance and repairs. The substitute plaintiff claims, however, that § 16-91 (b) of the Milford Code of Ordinances converted the defendant's otherwise discretionary duties to inspect and maintain into ministerial functions. We disagree.

Section 16-91 (b) of the Milford Code of Ordinances provides in relevant part: "It shall be the responsibility of the owner, licensee, or operator of any marina, repair yard, or other maritime facility located within any harbor, waterway or other maritime facility, to maintain the physical improvements under his jurisdiction in a

safe . . . condition at all times . . . ."[2] The plain language of this ordinance does nothing to alter the common-law duty of a possessor of land to inspect and to maintain its premises in a reasonably safe condition for its invitees. See *McDermott* v. *Calvary Baptist Church*, supra, 68 Conn. App. 294–95. Neither the common law nor the ordinance prescribes the manner in which the defendant is to perform reasonable and proper inspection and maintenance activities. What is reasonable and proper is left to the discretion of the defendant. See *Evon* v. *Andrews*, supra, 211 Conn. 506–507 (inspection by definition involves checking or testing subject against established standards, and no matter how objective standard is, inspector's decision whether subject of inspection falls below standard and whether remedial measures are required involves exercise of judgment); *Segreto* v. *Bristol*, supra, 71 Conn. App. 857–58 (where city employees not ordered to maintain premises in any particular manner, duty to maintain remained discretionary). The defendant's discretionary duty under the common law is not rendered ministerial by the mere fact that a municipality chooses to codify it as an ordinance. The nature of the duty remains unchanged. Accordingly, the defendant's actions in connection with the inspection and maintenance of its premises are shielded by the immunity preserved under § 52-577n (a) (2) (B).

With respect to the defendant's duty to warn of unsafe conditions, we reach a different conclusion. Section 16-173 of the Milford Code of Ordinances provides: "Whenever any buildings, structures or floating facilities within a harbor or marine facility either on land or water are found to be defective or damaged so as to be unsafe or dangerous to persons or property, it shall

---

[2] The defendant concedes that its management of Milford Landing is subject to the provisions of both ordinances cited by the substitute plaintiff but disputes only the nature of the duties imposed by those ordinances.

be the duty of the owner, agent, lessee, operator or person in charge thereof to immediately post a proper notice and/or fence or barricade and at night to adequately light such unsafe area or areas, and such unsafe area or areas shall be kept posted and lighted and/or fenced or barricaded until the necessary repairs are made." Similar to § 16-91 (b), this ordinance codifies the common-law duty to warn invitees of known hazards and in addition prescribes the manner in which that warning shall be issued. The form of the warning, i.e., by posting a notice or fence or barricade and by lighting the hazard at night, as well as the timing of the warning, i.e., immediately upon discovery of the unsafe condition and until necessary repairs are made, are set forth explicitly in the ordinance.

We are not persuaded by the defendant's argument that the duty to warn of known hazards, under both the common law and the ordinance, is a "general objective" that, in order to be achieved, requires the exercise of sound discretion and judgment by those in charge of the premises. As we observed in *Kolaniak* v. *Board of Education*, 28 Conn. App. 277, 281, 610 A.2d 193 (1992), "[e]very voluntary physical act necessarily requires some sort of preceding thought process and decision by the actor." On the basis of this maxim, we declined to equate the act of clearing snow and ice by maintenance workers, in accordance with a directive by the policymaking board of education, with policy decisions usually afforded protection by the doctrine of governmental immunity. Id. The act of warning invitees of hazards is not rendered more discretionary than the removal of snow from a sidewalk merely by virtue of the fact that the defendant may choose between a sign or a barricade. The general objective, i.e., the safety of the premises, remains unchanged.

In addition, our Supreme Court has observed that "[a] ministerial duty on the part of an official often

follows a quasi-judicial determination by that official as to the existence of a state of facts. Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the duty of giving effect, by taking appropriate action, to the determination is often ministerial." *Pluhowsky* v. *New Haven*, 151 Conn. 337, 347–48, 197 A.2d 645 (1964).

For example, "[i]n *Leger* v. *Kelley*, 142 Conn. 585, 589, 116 A.2d 429 [(1955)], the determination by the motor vehicles commissioner as to whether the car in question was manufactured after July 1, 1937, and, if so, whether it was equipped with a type of safety glass approved by him, was quasi-judicial and not ministerial. After that determination had been made, the commissioner's duty of registering or refusing to register the car, according to the determination which he had reached, was ministerial, since the commissioner had no discretion in the matter." *Pluhowsky* v. *New Haven*, supra, 151 Conn. 348. Similarly, in *Wright* v. *Brown*, 167 Conn. 464, 471–72, 356 A.2d 176 (1975), the dog warden was charged under General Statutes § 22-358 with the duty of quarantining a dog for fourteen days once she found that the dog had bitten a person who was not on the premises of the owner or keeper of the dog. The court observed: "While the determination of that state of facts involved the exercise of judgment, the subsequent duty to quarantine for fourteen days was mandatory and, therefore, ministerial." *Wright* v. *Brown*, supra, 472.

In this case, the duty of the defendant to inspect and to maintain its property is, as we have explained, discretionary in nature. The court improperly concluded, however, that the discretionary nature of that predicate activity rendered the subsequent duty to warn invitees of known hazards equally discretionary. Once an initial determination of an unsafe condition is made, § 16-173 of the Milford Code of Ordinances requires "some sort of preceding thought process and decision"

that falls well short of the type of policy decision usually afforded protection by the doctrine of governmental immunity. See *Kolaniak* v. *Board of Education,* supra, 28 Conn. App. 281.

The court nonetheless properly rendered summary judgment because the plaintiff failed to provide an evidentiary foundation for her assertion that the defendant had made the initial determination of an unsafe condition. Our review of the record reveals that in support of its motion for summary judgment, the defendant provided a partial transcript of the deposition testimony of Richard Hosking, the harbor operations director in charge of Milford Landing. At his deposition, Hosking testified that repairs are made to the patio on an annual basis in the spring, due to the winter frost, and that in his judgment, such repairs were never necessary during the summer, notwithstanding daily inspections of the patio surface. The plaintiff, in response, failed to submit any evidence that made the defendant's knowledge of a defect a genuine issue. Accordingly, the court properly rendered summary judgment because the plaintiff could not prove that the defendant had a duty to perform its ministerial warning function under § 16-173 of the Milford Code of Ordinances.

The judgment is affirmed.

In this opinion the other judges concurred.