# PAUL BONINGTON ET AL. *v.* TOWN OF WESTPORT ET AL.
## (SC 18514)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

---

\* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Argued April 21—officially released July 6, 2010

*Joseph M. Brophy*, for the appellants (plaintiffs).

*Mark A. Perkins*, for the appellees (defendants).

*Opinion*

KATZ, J. The plaintiffs, Paul Bonington and Julie Bonington, appeal[1] from the summary judgment rendered in favor of the defendants, the town of Westport (town), the town's planning and zoning department (department) and three department employees (individual defendants)[2] in the plaintiffs' negligence action. The plaintiffs had sought to recover litigation expenses they incurred in bringing an action against the owners of

---

[1] The plaintiffs appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The three individuals named as defendants are Larry Bradley, the department's director, Susan Reynolds, the town's zoning enforcement officer, and Mary Papadakos, the town's zoning enforcement inspector.

abutting property after the defendants allegedly had failed to enforce the town's zoning regulations, to inspect the abutting property properly and to rectify zoning violations on the abutting property. The dispositive issue on appeal is whether the trial court properly concluded that the individual defendants were shielded from liability by governmental immunity. We affirm the trial court's judgment.

The record reveals the following undisputed facts and procedural history. In or about April, 2003, Sabin Associates, LLC (contractor), razed a dwelling on property that abutted the rear boundary of the plaintiffs' property (abutting property) and began construction of a new dwelling. In December, 2003, the abutting property was sold to Erik Mace and his wife, Rebecca Mace. From October, 2003, through some time in 2006, the plaintiffs repeatedly contacted the department to complain about changes that the contractor had made to the abutting property. Specifically, they complained that the contractor had imported substantial landfill that raised the grade of the abutting property approximately three to four feet over a large area at the rear boundary of the property and created a slope that increased the water runoff onto the plaintiffs' property, which caused flooding and threatened to erode a wall on the plaintiffs' property. The plaintiffs claimed that it was evident that the contractor had undertaken this action without having obtained the proper process, permits and authorization and that the regrading of the abutting property was in violation of several of the town's zoning regulations. Although, at one point in late 2003 or early 2004, the defendant Larry Bradley's predecessor as director of the department had told the plaintiffs that she was working with the contractor to respond to the plaintiffs' complaints, no changes were made to the abutting property. During that same period, the town's zoning enforcement officer, the defendant

Susan Reynolds, and the town's zoning enforcement inspector, the defendant Mary Papadakos, separately inspected the abutting property, along with Bryan Thompson, an engineer in the town's department of public works. Reynolds, Papadakos and Thompson concluded that there were no zoning violations on the abutting property, a conclusion that was at some point communicated to the plaintiffs. The last written response the plaintiffs received from the defendants was an August, 2005 letter from Papadakos stating that the "[d]epartment [is] still investigating your complaint regarding [the abutting property]" and that "Reynolds will respond to your inquiries once our research is completed."

Because they never received any satisfactory action from the defendants, the plaintiffs initiated a legal action against the Maces, who then owned the abutting property. At some unspecified time, that action was settled after the Maces agreed to correct the drainage problem and to rectify other concerns raised by the plaintiffs.

Thereafter, the plaintiffs commenced the present negligence action against the defendants. In the first count of their revised complaint, brought against the department, Reynolds, Papadakos and Bradley, the plaintiffs alleged that they had been forced to initiate legal action against the Maces, at great expense in fees and costs, because of those defendants' "continuing failure to do their job, their negligent methods of inspection or lack thereof and their continued failure to enforce or even rule on claimed violations of the [z]oning regulations . . . ." Specifically, the plaintiffs alleged that those defendants had issued certain permits to the contractor despite property conditions that were not in conformity with zoning regulations. They further alleged that, each time they had complained, they were informed that no zoning violations had been found and that their com-

plaints were being looked into, a conclusion that the defendants improperly had reached in reliance on the opinion of Thompson, who was an employee of another department not charged with making such findings.[3] In the second count, brought against the town, the plaintiffs reasserted the allegations in the first count and alleged that those actions were imputed to the town pursuant to General Statutes § 7-465.[4]

The defendants filed an answer and asserted as special defenses to the first count that they were immune from liability pursuant to General Statutes § 52-557n (a) (2) (B) and (b) (8)[5] and that the claims were time barred.

[3] Although the plaintiffs' complaint did not name Thompson specifically, Paul Bonington's affidavit, submitted in opposition to the defendants' motion for summary judgment, specified that Thompson was the person on whose opinion the defendants improperly had relied.

[4] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section. . . ."

[5] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B)

Thereafter, the defendants filed a motion for summary judgment on the basis of their special defenses and on the ground that they did not owe the plaintiffs a legal duty that would support a negligence action. In support of their motion, the defendants submitted affidavits from Papadakos, Thompson, Reynolds and Bradley. They attested, inter alia: that inspections of the abutting property had been conducted by Papadakos on October 27, 2003, revealing no regrading, and by Reynolds and Thompson on June 2, 2004, revealing regrading but a net decrease in water runoff due to the installation of a drainage system that the previous dwelling did not contain; that both inspections had revealed no zoning violations; and that an inspection to determine whether property conforms with the town's zoning regulations requires the exercise of professional judgment. In opposition to the motion for summary judment, the plaintiffs submitted, inter alia, an affidavit from Paul Bonington, wherein he largely restated the allegations of the complaint but further contended that Thompson's determination that no zoning violation existed, despite patently obvious evidence to the contrary, was predicated on Thompson's personal friendship with the contractor.[6]

negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances . . . ."

[6] We note that the plaintiffs' appendix includes a May 3, 2006 letter from Melvin H. Barr, Jr., president of Barr Associates, LLC, a planning and development consulting firm. In that letter, Barr states his opinion, on the basis of an inspection of the properties at issue and the zoning records, that the

The trial court granted the defendants' motion for summary judgment on both counts of the complaint. With respect to the first count, the trial court first concluded that the individual defendants were being sued in their official capacity, and, accordingly, were entitled to whatever immunity the town would have under § 52-557n.[7] The court next concluded that the question of what constitutes a reasonable or proper inspection involves the exercise of discretion, as does the enforcement of zoning regulations. It therefore determined that it was incumbent upon the plaintiffs to allege and provide an evidentiary basis for an exception to the governmental immunity that attaches to discretionary acts pursuant to § 52-557n (a) (2) (B). The court found nothing in the complaint or in Paul Bonington's affidavit to establish such an exception and noted that the plaintiffs' memorandum of law in opposition to summary judgment simply had made a cursory assertion that, if the defendants' acts were discretionary, the identifiable

defendants had failed to enforce certain zoning regulations in issuing certain permits and authorization for the construction on the abutting property and that the grade of the property was in violation of the town's zoning regulations. Although this letter reflects that it was marked as a full exhibit, apparently in anticipation of trial, it is not included in the record prepared for this appeal. The docketing statement submitted by the plaintiffs, pursuant to Practice Book § 63-4, states that the only exhibits at trial were those attached to the motion for summary judgment and the response thereto. That letter is not attached, however, to the plaintiffs' memorandum in opposition to the motion for summary judgment that is in this court's file. Moreover, because the trial court made no mention of the letter in discussing the evidence submitted, there is no indication that the letter was before the trial court when it rendered its decision. It is the appellant's burden to provide the court with a proper record for review. Practice Book § 61-10. We need not decide, however, whether Barr's letter properly can be considered part of the record because it contains no facts that would affect the disposition of this appeal.

[7] The court summarily disposed of the claim against the department as follows: "As for the [department], it is not an independent entity capable of being sued for money damages." The plaintiffs do not address this conclusion or the department's liability in any manner. Therefore, we limit our analysis to the court's conclusions as they pertain to the individual defendants and the town.

person-imminent harm exception to immunity would apply. The court concluded that the plaintiffs were not subject to imminent harm because their complaint merely had alleged a "threat" to their septic system from the water runoff and Paul Bonington's response to an interrogatory regarding whether any failure to the system had yet occurred was "not as of this time." The court also concluded that summary judgment was proper on the first count because public policy concerns weighed against imposing a duty of care to support an action in negligence.

With respect to the second count, seeking to impute the actions of the individual defendants to the town pursuant to § 7-465, the court noted that the only damages claimed were litigation expenses incurred by the plaintiffs in their action against the Maces. The court concluded that such damages were not recoverable under § 7-465.

The plaintiffs appealed from the grant of summary judgment in favor of the defendants. See footnote 1 of this opinion. The plaintiffs contend that the trial court's conclusion that the individual defendants were entitled to governmental immunity was improper because: (1) checking to see whether required permits have been obtained and filed, inspecting and accurately reporting the result of inspections for zoning violations and enforcing clear violations of zoning regulations are not discretionary acts; and (2) even if such actions are discretionary, the identifiable person-imminent harm exception applies because (a) as an abutting property owner to property that violates the town's zoning regulations, they are identifiable, and (b) imminent harm is shown by, inter alia, the fact that the failure to enforce the regulations already was causing drainage problems by flooding their property and washing out their gardens. The plaintiffs further contend that the court improperly concluded that the defendants had not owed

them a duty of care and that the litigation expenses that the plaintiffs had incurred in bringing such an action were not recoverable under § 7-465. We conclude that the trial court properly rendered summary judgment on the ground of governmental immunity. We further conclude that, because the sole basis on which the plaintiffs sought to impose liability on the town was through the indemnification statute, § 7-465, not the municipal liability statute, § 52-557n, the trial court's conclusion as to the individual defendants' immunity necessarily disposes of the plaintiffs' claim under § 7-465.

We begin with the principles that guide our review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 613, 903 A.2d 191 (2006). "As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal

quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 46–47, 881 A.2d 194 (2005). "[T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where the] resolution of those factual issues is properly left to the jury." *Mulligan* v. *Rioux*, 229 Conn. 716, 736, 643 A.2d 1226 (1994).

In applying this standard of review, we look to the common-law and statutory doctrines that determine the tort liability of municipal employees. "At common law, municipal officers were liable for their own torts, but the municipality, their municipal 'master,' was not vicariously liable for those torts. . . . Section 7-465 (a) effectively circumvented the general common law immunity of municipalities from vicarious liability for their employees' acts by permitting injured plaintiffs to seek indemnification from a municipal employer for such acts under certain circumstances and after conformance with certain statutory requirements, but it did not bar a plaintiff from seeking redress from those employees." (Citations omitted.) *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 193, 592 A.2d 912 (1991).

Under the common law, "[g]enerally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty [that] is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 318, 907 A.2d 1188 (2006). "There

are [however] three exceptions to discretionary act immunity. Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) Id., 319. The only exception raised by the plaintiffs in the present case, if the defendants' acts are deemed by this court to be discretionary, is the one under which "liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) Id., 320.

Therefore, the first question we must address is whether the alleged acts of negligence were discretionary or ministerial. "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that] [t]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B),[8] turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily

[8] Although the plaintiffs sought to impose liability on the municipal employees under the common law and on the municipality under § 7-465, not § 52-557n (a), this court has recognized that the common-law exceptions to liability for municipal employees are codified under § 52-557n (a). *Violano* v. *Fernandez*, supra, 280 Conn. 320. Therefore, the analysis is the same. See *Myers* v. *Hartford*, 84 Conn. App. 395, 401, 853 A.2d 621 (common-law "employee immunity for discretionary acts is identical to the municipality's immunity for its employees' discretionary acts under § 52-557n"), cert. denied, 271 Conn. 927, 859 A.2d 582 (2004).

were discretionary in nature, summary judgment is proper." (Internal quotation marks omitted.) *Swanson* v. *Groton*, 116 Conn. App. 849, 854, 977 A.2d 738 (2009); see *Martel* v. *Metropolitan District Commission*, supra, 275 Conn. 48–49.

As we previously have noted, the plaintiffs claim that checking to see whether required permits and forms have been obtained and filed, inspecting and accurately reporting the result of inspections for zoning violations and enforcing clear violations of zoning regulations are not discretionary acts.[9] Having reviewed the allegations in the plaintiffs' complaint and the affidavit submitted in opposition to the motion for summary judgment, we disagree.

"If by statute or other rule of law the official's duty is clearly ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance. . . . [See] *Blake* v. *Mason*, 82 Conn. 324, 327, 73 A. 782 (1909) (ministerial act is one which person performs in given state of facts, in prescribed manner, in obedience to mandate of legal authority, without regard to or exercise of own judgment on propriety of act being done)." (Citations omitted; internal quotation marks omitted.) *Grignano* v. *Milford*, 106 Conn. App. 648, 654, 943 A.2d 507 (2008). There is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions. See *Violano* v. *Fernandez*, supra, 280 Conn. 323 ("the plaintiffs in the present

---

[9] We note that the plaintiffs' complaint also alleges that the defendants failed to take "any action on any complaint from which the [p]laintiffs could have taken appropriate legal action to have said [d]efendants' determinations properly reviewed . . . ." The plaintiffs have cited no regulations, statutes or common-law authority that required the defendants to "rule" on their complaint or to do so within a specified period of time, and they have provided no analysis in their appellate brief relating to this allegation. Therefore, we deem this allegation to be abandoned on appeal. See *Smith* v. *Andrews*, 289 Conn. 61, 80, 959 A.2d 597 (2008) (similarly declining review).

case have failed to allege that the acts or omissions complained of were ministerial in nature because . . . the plaintiffs have not alleged that [the defendant official] was required by any city charter provision, ordinance, regulation, rule, policy, or any other directive to secure the property in any prescribed manner"); *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 399, 955 A.2d 107 (2008) (relying on cases from other jurisdictions holding that "when a judge directs or orders a warrant recalled, retired or dismissed, or there is a law that operates to this effect, clerks, magistrates or other personnel are not absolutely protected by governmental immunity because the act of retiring or vacating [an arrest] warrant is ministerial").

Nevertheless, even when the duty to respond to a violation of law is ministerial because that specific *response* is mandated, the predicate act—determining whether a violation of law exists—generally is deemed to be a discretionary act. "A ministerial duty on the part of an official often follows a quasi-judicial determination by that official as to the existence of a state of facts. Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the duty of giving effect, by taking appropriate action, to the determination is often ministerial." *Pluhowsky* v. *New Haven*, 151 Conn. 337, 347–48, 197 A.2d 645 (1964); see, e.g., *Wright* v. *Brown*, 167 Conn. 464, 472, 356 A.2d 176 (1975) (concluding in case of dog warden charged under General Statutes § 22-358 with duty of quarantining dog for fourteen days once she found that dog had bitten person who was not on premises of owner or keeper of dog: "[w]hile the determination of that state of facts involved the exercise of judgment, the subsequent duty to quarantine for fourteen days was mandatory and, therefore, ministerial");[10]

---

[10] In *Wright* v. *Brown*, supra, 167 Conn. 468, this court addressed a theory of recovery for statutory negligence, under which: "Where a statute is designed to protect persons against injury, one who has, as a result of its

*Leger* v. *Kelley*, 142 Conn. 585, 589, 116 A.2d 429 (1955) (concluding that determination by commissioner of motor vehicles as to whether car was manufactured after July 1, 1937, and, if so, whether it was equipped with type of safety glass approved by him, was quasijudicial and not ministerial, but, after that determination had been made, commissioner's duty of registering or refusing to register car, according to which determination he had reached, was ministerial, since commissioner had no discretion in that matter); *Grignano* v. *Milford*, supra, 106 Conn. App. 656–60 (concluding that defendant's duty to perform reasonable and proper inspection and maintenance activities on premises was discretionary because ordinance did not prescribe manner in which defendant was to do so, but duty to warn upon making discretionary determination of hazardous condition was ministerial because ordinance prescribed both duty and manner in which warning should be issued). In order to overcome qualified immunity in such cases, the plaintiff must plead and prove that the official made the discretionary determination that triggered the ministerial duty. See *Grignano* v. *Milford*, supra, 660 (concluding that trial court properly rendered summary judgment because plaintiff had failed to provide evidentiary foundation for claim that defendant had made initial determination of unsafe condition to trigger ministerial duty to warn).

In the present case, the regulations on which the plaintiffs rely either impose obligations on the *permit applicant* or clearly require a predicate discretionary determination by the defendants as to whether a viola-

violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery." Statutory negligence was deemed actionable in that case upon satisfaction of two conditions: (1) the plaintiff must be a member of the class protected by the statute; and (2) the injury must be of the type the statute was intended to prevent. Id., 468–69.

tion exists.[11] To the extent that the plaintiffs contend that the zoning violations were so obvious that they precluded the exercise of discretion, we treat such contentions as implicating the exceptions to discretionary act immunity, and as not changing the nature of the act. See *Fleming* v. *Bridgeport*, 284 Conn. 502, 532–33, 935 A.2d 126 (2007).

Significantly, we note that the crux of the plaintiffs' complaint stems from the defendants' allegedly improper or inadequate inspections. This court has held, however, that inspections to determine whether property conforms to regulations and codes are of a discretionary nature. In *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989), the plaintiffs had brought an action against a municipality and various officials, alleging in part that the death of their decedents in a multifamily apartment house fire had been caused by the defendants' negligence in either failing to inspect properly the apartment house or to undertake remedial action to correct various violations of the fire code, housing code and health code. The trial court granted the defendants' motion to strike this count on the ground that they were immune from liability because the alleged acts were discretionary in nature. Id., 504.

---

[11] We note that neither the plaintiffs' complaint nor any pleadings or documents submitted to the court provide any text of any of the relevant regulations that the plaintiffs claim have been violated. We have, however, taken judicial notice of those regulations. For example, one regulation on which the plaintiffs rely provides: "If excavation or regrading under any of the foregoing exceptions is carried on *in a manner so as to circumvent the protection of property sought by the provisions of this regulation or so as to appreciably change the groundwater table or alter natural drainage basins or flow in a manner not commensurate with public health, safety and welfare,* the Zoning Enforcement Officer or the Planning and Zoning Commission shall issue a cease and desist order and require the owner to remedy the violation." (Emphasis added.) Westport Zoning Regs., § 32-8.1.4. The plaintiffs made no allegation nor submitted any proof that the defendants had concluded that these conditions had been met, and the defendants' proof is to the contrary.

On appeal, this court agreed that the complaint's allegations that the defendants had failed " 'to make reasonable and proper inspections' " of the premises, and " 'to conduct adequate inspections' " involved discretionary acts. Id., 506. The court reasoned: "While an inspection by definition involves 'a checking or testing of an individual against established standards'; Webster, Ninth New Collegiate Dictionary; what constitutes a reasonable, proper or adequate inspection involves the exercise of judgment. Further, no matter how objective the standard, an inspector's decision as to whether a building falls below a standard and whether remedial orders are therefore required involves the exercise of his or her judgment." *Evon* v. *Andrews*, supra, 506.

We note that, under § 52-557n (b) (8), there is a specific limitation on municipal liability for negligent inspection of property and an exception thereto. That provision provides: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from . . . (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances . . . ." General Statutes § 52-557n (b). In the present case, however, the plaintiffs sought to impose liability only under the common law and by way of indemnification under § 7-465. Indeed, the defendants interposed § 52-557n (b) (8) as an affirmative

defense, but the plaintiffs asserted a general denial to that defense.[12] Because a party generally is limited on appeal to the theory that they have advanced at trial; *Williams* v. *New Haven*, 243 Conn. 763, 766, 707 A.2d 1251 (1998); *Spears* v. *Garcia*, 66 Conn. App. 669, 675–76, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003); we do not consider whether the plaintiffs could recover under this provision.

We therefore conclude that the trial court properly determined that the alleged acts of negligence constituted discretionary acts to which municipal immunity attached. Accordingly, we turn to the question of whether the plaintiffs fall within the only exception to that immunity that they have raised—the identifiable person/imminent harm exception. Under this exception, the circumstances must "make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Cotto* v. *Board of Education*, 294 Conn. 265, 273, 984 A.2d 58 (2009). Because the defendants have stipulated that the plaintiffs are identifiable victims, we limit our review to the imminent harm requirements of this exception.

The plaintiffs' complaint alleged two types of harm: first, that the regrading of the abutting property had redirected surface water drainage onto the plaintiffs' property and, as a result, "every time it rained, excessive amounts of surface water were discharged onto the [p]laintiffs' property causing flooding, erosion and threatening the integrity of the septic system"; and second, that as a result of the defendants' failure to address these conditions, the plaintiffs had been forced to incur legal expenses to have the abutting property owner

---

[12] Moreover, at oral argument before this court, the plaintiffs' counsel specifically disavowed any reliance on § 52-557n because the plaintiffs were of the view that § 52-557n would not apply to the department and its employees.

correct these violations. The plaintiffs claim that, in determining that the imminent harm standard had not been met, the trial court improperly relied on the plaintiffs' admission in their answers to interrogatories that their septic system had *not yet failed* and improperly disregarded the plaintiffs' contention that the violations already had caused harm by washing out their gardens and flooding their yard.

We conclude that such claims fall short of the limited circumstances under which imminent harm may be established. Imminent does not simply mean a foreseeable event at some unspecified point in the not too distant future. Rather, we have required plaintiffs to identify a discrete place and time period at which the harm will occur. "[R]ecent decisions focus on the government actors' specific awareness of the imminent harm at issue, and further illustrate the very limited recognition in this state accorded to the identifiable person, imminent harm exception. *Evon* v. *Andrews*, [supra, 211 Conn. 507]; see *Fleming* v. *Bridgeport*, supra, 284 Conn. 505, 534–35 (exception did not apply when police officers accused of unlawfully ejecting plaintiff from her rented property were not aware of imminent harm, namely, that she was resident of property with nowhere else to go, rather than guest); *Violano* v. *Fernandez*, supra, 280 Conn. 331–32 (risk of theft from negligently secured building taken by city pursuant to eminent domain power, like danger of fire, implicates a wide range of factors that can occur, if at all, at some unspecified time in the future and was not limited to discrete place and time period, unlike falls on ice or in school hallway . . .); *Doe* v. *Petersen*, supra, 279 Conn. 619 (exception did not apply because town official never became aware of the alleged assault, [so] it could not have been apparent to him that his response to the plaintiff's concerns would have been likely to subject her to a risk of harm); *Evon* v. *Andrews*, supra,

508 (victims of apartment building fire after allegedly negligent inspection and failure to enforce housing code were not subject to imminent harm because the fire could have occurred at any future time or not at all); *Bailey* v. *West Hartford*, 100 Conn. App. 805, 813–14, 921 A.2d 611 (2007) (exception did not apply when there was no allegation that responding firefighters were aware that decedent was present in burning house, because it would be impossible for the defendants to understand the risk of death without knowing that the decedent was in the house when the building was on fire)." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 354 n.30, 984 A.2d 684 (2009); cf. *Burns* v. *Board of Education*, 228 Conn. 640, 650, 638 A.2d 1 (1994) ("this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly 'treacherous' area of the campus").

Although the plaintiffs' property undoubtedly constitutes a discrete place, and rainfall inevitably would occur at that site at some point in the future, a significant rainfall causing excessive surface runoff necessarily would occur at an indefinite point in time. Such harm is not imminent. Similarly, even if the defendants "should have known" that their failure to respond satisfactorily to the plaintiffs' complaints would force the plaintiffs to initiate legal action and in turn incur legal expenses, there was no definite point in time when the plaintiffs necessarily would have undertaken such action.

We, conclude, therefore, that the trial court properly determined that the individual defendants are entitled to governmental immunity. Accordingly, we need not consider the trial court's alternate ground for summary judgment as to these defendants, e.g., that they did not owe the plaintiffs a duty that would support an action in negligence. See *Violano* v. *Fernandez*, supra, 280

Conn. 335 ("even if a municipality and its official or employee owes a plaintiff a private duty, the municipality and its official or employee will be immune from liability for their negligence if the act complained of was discretionary in nature and does not fall within the three exceptions to discretionary act immunity"). Similarly, we need not consider the trial court's conclusion that, under § 7-465, the plaintiffs cannot recover the legal fees they incurred. A claim for indemnification against a municipality under § 7-465 is entirely dependent upon establishing liability against a municipal employee. See *Wu* v. *Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987) ("in a suit under § 7-465, any municipal liability which may attach is predicated on prior findings of individual negligence on the part of the employee and the municipality's employment relationship with that individual"); *Kostyal* v. *Cass*, 163 Conn. 92, 97, 302 A.2d 121 (1972) ("Whatever may be the full scope and effect of the statute, in no event may the municipality be held liable under it unless the municipal employee himself becomes obligated to pay [sums] by reason of the liability imposed upon . . . [him] by law for physical damages to person or property. . . . While § 7-465 provides an indemnity to a municipal employee from his municipal employer in the event the former suffers a judgment under certain prescribed conditions, it is quite clear that the municipality does not assume the liability in the first instance." [Citation omitted; internal quotation marks omitted.]).

The judgment is affirmed.

In this opinion the other justices concurred.