******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PAUL HARRIS *v.* DEPARTMENT OF CORRECTION
(AC 35971)

Gruendel, Sheldon, and Sullivan, Js.

*Argued October 23—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Peck, J.)

*Paul Harris*, self-represented, the appellant
(plaintiff).

*Jennifer P. Bennett*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general, and *Ann E. Lynch*, assistant attorney general, for
the appellee (defendant).

*Opinion*

PER CURIAM. The self-represented plaintiff, Paul Harris, appeals from the trial court's summary judgment in favor of the defendant, the Department of Correction. On appeal, the plaintiff claims that the court improperly concluded that the evidence he presented did not raise a genuine issue of material fact with respect to his allegations that the defendant subjected him to discrimination on the basis of his race and color in violation of the Fair Employment Practices Act,[1] General Statutes § 46a–60 (a) (1).[2] We affirm the judgment of the trial court.

The following facts and procedural events from the twelve year history of this case are relevant to this appeal. The plaintiff, an African-American male, began his employment as a correction officer with the defendant in October, 1994. On June 27, 2000, two lieutenants employed by the defendant observed the plaintiff watching television during his work shift.[3] Upon being questioned by the lieutenants, the plaintiff denied having watched television. As part of a subsequent administrative investigation, the defendant reviewed surveillance camera footage from the prison that showed the plaintiff watching television for approximately twenty-two minutes. The plaintiff has reviewed this videotape footage, but does not possess a copy of it. On December 28, 2000, after a hearing on this matter, the plaintiff received a thirty day suspension for neglecting his duties and for "being less than truthful during an Administrative Inquiry." The letter advising the plaintiff of his suspension informed him that the defendant takes its employees' past disciplinary history into account when issuing reprimands.

In July, 2001, the plaintiff filed administrative complaints with the Equal Employment Opportunity Commission (EEOC) and the Connecticut Commission on Human Rights and Opportunities (CHRO), alleging that the defendant discriminated against him on the basis of his race and color. The CHRO reviewed the merits of the plaintiff's complaint and dismissed it on the basis that there was no reasonable possibility that further investigation would have resulted in a finding of reasonable cause. In May, 2002, the CHRO denied the plaintiff's request for reconsideration of his case. After the CHRO signed a release of jurisdiction, the plaintiff commenced a civil action in the Superior Court, alleging that he had been subjected to discrimination based upon his race and color in violation of § 46a-60 (a) (1).

On February 3, 2009, the plaintiff filed a second amended complaint, which included an additional allegation that his rights under Title VII of the Civil Rights Act of 1964 (Title VII); 42 U.S.C. § 2000e et seq., had been violated. The plaintiff then removed the case to the United States District Court for the District of Con-

necticut. In April, 2009, the District Court granted the defendant's motion to remand the case back to the Superior Court, reasoning that the plaintiff had not obtained a right-to-sue letter from the EEOC, and, that even if he had done so, "an amendment adding a Title VII claim [to the plaintiff's complaint] would be barred as untimely." *Harris* v. *Connecticut Dept. of Correction*, United States District Court, Docket No. 3:09CV00265 (AWT) (D. Conn. April 7, 2009). The plaintiff did not amend the complaint that he had filed in state court to remove the Title VII allegations. In May, 2009, the defendant filed an "Amended Answer and Special Defense." On February 24, 2012, the court issued a scheduling order and ordered the parties to participate in a trial management conference to be held on August 21, 2013.[4] Trial was scheduled for August 28, 2013.

On December 13, 2012, the defendant timely filed a motion for summary judgment and an accompanying memorandum of law. On August 1, 2013, the court, *Peck*, *J.*, granted the defendant's motion pursuant to Practice Book § 17-49. In ruling on the summary judgment motion, the court considered the affidavit of Tracy Butler, the defendant's human resources director. Butler stated in her affidavit that the plaintiff had received a suspension of thirty days "[a]s a result of [his] conduct on June 27, 2000 and for his subsequent untruthfulness during the investigation that followed  . . . ." During the subsequent investigation of the plaintiff's conduct, he "denied having watched television" when questioned on two separate occasions. Butler also stated that "[i]n disciplining employees [pursuant to its progressive discipline guidelines], their past discipline is taken into account." The plaintiff's disciplinary history during the course of his employment with the defendant included the following incidents: (1) in 1995, leaving his post prior to the end of his shift; (2) in 1997, failing to report an arrest and the suspension of his driver's license; and (3) in 2000, bringing contraband into the defendant's facility. Further, Butler stated that, in the past, employees similarly situated to the defendant "have received the same, and harsher punishment, including termination," for engaging in the same misconduct. The court found that the plaintiff failed (1) to "present properly authenticated evidence to refute the defendant's claim that its decision to suspend [the] plaintiff for thirty days was anything other than a legitimate business decision," or (2) to "come forward with evidence of disparate treatment of similarly situated employees or . . . otherwise [demonstrate] that the defendant is not entitled to summary judgment in its favor on his claim of race discrimination." On August 20, 2013, the plaintiff filed the present appeal.

On appeal, the plaintiff argues that he was subjected to a punishment that was more severe than those received by similarly situated white coworkers who have previously been accused of the same misconduct.

The plaintiff specifically argues that the court improperly (1) violated the terms of its scheduling order by granting summary judgment in favor of the defendant before the parties had participated in the trial management conference, and (2) declined to consider whether the defendant's refusal to produce an allegedly "doctored" videotape of the incident pursuant to his subpoena request, filed after the parties had briefed and argued the defendant's motion for summary judgment, violated his constitutional rights. We disagree with the plaintiff's contentions and conclude that the court properly granted the defendant's motion for summary judgment.

"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the non-moving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 305, 999 A.2d 700 (2010).

In granting the defendant's motion for summary judgment, the court identified the proper framework for the burden of production of evidence and the burden of persuasion in an employment discrimination case. "First, the [plaintiff] must establish a prima facie case of discrimination. . . . In order to establish a prima facie case, the [plaintiff] must prove that: (1) he is in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) . . . the adverse action occurred under circumstances giving rise to an inference of discrimination. . . . Once the [plaintiff] establishes a prima facie case, the [defendant] then must produce legitimate, nondiscriminatory reasons for its adverse employment action. . . . This burden is one of production, not persuasion; it can involve no credibility assessment. . . .

"After the plaintiff has established a prima facie case,

and the defendant has produced evidence of a legitimate, nondiscriminatory reason for the employment action, [t]he plaintiff retains the burden of persuasion. [The plaintiff] now must have the opportunity to demonstrate that the [defendant's] proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination. [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence. . . . Employment discrimination therefore can be proven either directly, with evidence that the [defendant] was motivated by a discriminatory reason, or indirectly, by proving that the reason given by the [defendant] was pretextual." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400–401, 880 A.2d 151 (2005); see also *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). With this background in mind, we turn to the plaintiff's claim in the present case.

Our examination of the record and the briefs of the parties persuades us that the judgment of the court should be affirmed. Viewing the evidence in the light most favorable to the plaintiff; see *Bonington* v. *Westport*, supra, 297 Conn. 305; we conclude that the court properly granted the defendant's motion for summary judgment because the plaintiff did not establish a prima facie case of discrimination in violation of § 46a-60 (a) (1). Specifically, there is no genuine issue of material fact as to the fourth prong required for a prima facie claim of discrimination. The plaintiff did not offer evidence adequate to support his allegation that his suspension occurred under circumstances giving rise to an inference of discrimination. See *Jacobs* v. *General Electric Co.*, supra, 275 Conn. 400. The plaintiff failed to demonstrate that George Anderson, a white correction officer who received a five day suspension for watching television while on duty, was "similarly situated" to him.[5] Unlike the plaintiff, Anderson admitted to committing the offense in question. The plaintiff did not proffer any evidence to attempt to demonstrate that Anderson had a disciplinary history that was comparable to his own. The plaintiff, accordingly, fails to raise a genuine issue of material fact as to the existence of circumstances surrounding his suspension that give rise to an inference of discrimination. We conclude that the court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

[1] In his second amended complaint, the plaintiff claimed that the defendant discriminated against him based on his race and color in violation of General Statutes § 46a-60 (a) (1) and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. The court's summary judgment stated that

"the plaintiff has failed to produce evidence that supports a prima facie case of race discrimination" under § 46a-60 (a) (1) or Title VII. "[I]t is . . . well established that [w]e look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both [the Fair Employment Practices Act and Title VII]." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 407, 968 A.2d 416 (2009). The plaintiff, however, did not advance any arguments in his appellate brief or during oral argument that his rights under Title VII were violated. "Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 711, 900 A.2d 498 (2006). "Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 570, 877 A.2d 761 (2005). This court, accordingly, declines to review the plaintiff's Title VII claim.

[2] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness. . . ."

[3] Department of Correction Administrative Directive 2.17, effective March 15, 2000, strictly prohibits "[u]nauthorized distractions while on duty," including the use of televisions.

[4] At oral argument before this court, the plaintiff stated that "on August 13, 2013, there would be a hearing [to be held before Judge Domnarski] where [he] would decide what evidence would be admissible and would not be admissible; that never happened." The plaintiff also stated that the hearing would be held at "2:30 [p.m.] that day." Our review of the record does not reveal an evidentiary hearing that was scheduled to be held on August 13, 2013. It appears that the plaintiff is referring to the trial management conference scheduled for August 21, 2013, which never occurred because the court granted summary judgment in favor of the defendant on August 1, 2013.

[5] Anderson's five day suspension was later reduced to a one day suspension pursuant to a stipulated agreement. The terms of this agreement also provided for the subsequent removal of all information pertaining to Anderson's suspension from his personnel file.

————————————————