******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GEORGE NORTHRUP ET AL. *v.* HENRY WITKOWSKI, JR., ET AL.
## (AC 38878)

Alvord, Prescott and Mullins, Js.

*Syllabus*

The plaintiff homeowners commenced this action against the defendants, the borough of Naugatuck and several of its town officials, to recover damages sustained as the result of repeated flooding of their property. They alleged that on eight occasions between 2009 and 2012, their property was inundated with water following heavy rainfall when the single catch basin in the area was clogged or otherwise inadequate to redirect water away from their property, and that the defendants negligently and recklessly had failed to perform their municipal duties in an appropriate manner. The trial court granted the defendants' motion for summary judgment on the ground of governmental immunity pursuant to statute (§ 52-557n [a] [2] [B]) as to the counts of the complaint alleging negligence and recklessness. From the judgment rendered thereon, the plaintiffs appealed to this court, claiming, inter alia, that issues of material fact existed as to whether the acts or omissions of the defendants were discretionary or ministerial in nature. Specifically, they claimed that certain language in a town ordinance, which assigned responsibility for the care, management, and maintenance of the town's storm water drainage system to the town's street commission, imposed a ministerial duty on the defendants to keep the storm drains and drainage pipes near the plaintiff's property in a safe and operable condition. *Held*:

1. The trial court correctly determined that there were no genuine issues of material fact with respect to whether the defendants' alleged negligent acts or omissions were discretionary in nature and, thus, subject to governmental immunity: although the town ordinance on which the plaintiffs' relied required the street commission to clean, to maintain and to repair the town's storm water sewer system, the ordinance contained no provisions that mandated the time or manner in which those responsibilities were to be executed, and the day-to-day decision making regarding when and how to direct town resources in furtherance of the duty to keep the storm water systems up-to-date and working properly necessarily was left to the judgment and discretion of street commission officials and employees; moreover, certain case law relied on by the plaintiffs in support of their claim that genuine issues of material fact existed as to whether the defendants' duty was discretionary in nature was factually distinguishable from the present case and contained dicta that was not binding on this court.

2. The trial court properly rejected the plaintiffs' claim that the identifiable person-imminent harm exception to discretionary act immunity applied to the facts of the present case, the plaintiffs having failed to demonstrate that the harm alleged was imminent; because the instances of flooding here occurred eight times over the course of four years during periods of greater than usual rainfall when the catch basins in the area either were filled with snow and ice or otherwise blocked by debris, and because there was not a high probability that damaging flooding would occur at any particular time, there was no clear and urgent need for action on the part of the defendants, and the court, therefore, properly determined that the plaintiffs could not demonstrate imminent harm.

3. The trial court properly rendered summary judgment in favor of the defendants on the counts of the complaint alleging recklessness; the plaintiffs' allegations of recklessness, which were identical to the allegations in support of the negligence counts, could not reasonably be characterized as rising above mere negligence and, even if true, were insufficient, as a matter of law, for their submission to the jury, as the record could not support a finding that any of the individual defendants acted or failed to act with the type of wanton disregard that is the hallmark of reckless behavior.

Argued April 19—officially released August 1, 2017

Action to recover damages for property damage sustained as a result of the alleged negligence of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Blue, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon; thereafter, the court denied the plaintiffs' motion to reargue, and the plaintiffs appealed to this court. *Affirmed.*

*Joshua F. Gilman*, for the appellants (plaintiffs).

*Thomas Gerarde*, with whom, on the brief, was *Emily E. Holland*, for the appellees (defendants).

*Opinion*

PRESCOTT, J. The underlying action arose as a result of the repeated flooding of residential property due to inadequate street drainage of which the municipality and its officials allegedly were aware but failed to correct. The plaintiffs, George Northrup and Helen Northrup,[1] the owners of the property at issue, appeal from the summary judgment rendered by the trial court in favor of the defendants—the borough of Naugatuck (town); Henry J. Witkowski, Jr., the town's former superintendent of streets; James Stewart, the former town engineer and, later, the town's director of public works;[2] and Robert A. Mezzo, the town's mayor[3]—upon its determination that all counts of the plaintiffs' complaint were barred by governmental immunity.

The plaintiffs claim on appeal that the court improperly determined that (1) the defendants were entitled to governmental immunity on all counts as a matter of law because the acts or omissions of which they complained were discretionary rather than ministerial in nature, (2) the identifiable person-imminent harm exception to governmental immunity did not apply to the flooding at issue because the plaintiffs were not subject to imminent harm, and (3) the allegations of recklessness directed against the individual defendants could not be sustained as a matter of law. We disagree with the plaintiffs and, for the reasons that follow, affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiffs as the nonmoving party, reveals the following facts and procedural history. The plaintiffs reside on property located in the town at 61 Nettleton Avenue. On eight different occasions between 2009 and 2012, the plaintiff's property was damaged when surface rainwater and/or "black water"[4] inundated the property because the single catch basins in the area routinely became clogged or inadequately redirected water away from the property.

After the first occurrence in July, 2009, Helen Northrup contacted Stewart, who, at that time, was the town's supervisory engineer. He told her that the flooding was the result of a rare storm and that it would not happen again. Despite his assurance, however, flooding occurred again in October and December of that year. The plaintiffs continued to contact Stewart, to no avail. The plaintiffs made several requests to the town for sandbags; one such request was granted, but others were denied or simply ignored.

The town received a report in October, 2009, from an engineering firm about the Nettleton Avenue neighborhood. The report indicated that, over the past forty years, many residences in the neighborhood had experienced periodic flooding of their properties following periods of heavy rainfall. It further indicated that the

drainage system in the area was likely to experience flooding after rainfalls of two inches or more, which could occur several times a year. The report attributed the flooding to the fact that runoff was required to flow through relatively narrow drainpipes that were in poor to fair condition and that the majority of catch basins in the area were old and had small openings that often became overgrown with vegetation or obstructed by trash. The report recommended that the town construct new, larger storm drains to handle the storm runoff in the area, but the town failed to adopt that proposal. The plaintiffs' property flooded again in July of 2010, March and August of 2011, and June and September of 2012.

The plaintiffs commenced the underlying action in February, 2010. They filed an amended complaint on March 11, 2013. The amended complaint contained nine counts. Counts one, two, and six sounded in negligence against Witkowski, Jr., Stewart, and the town. Counts three through five alleged common-law recklessness against the individual defendants. Counts seven through nine alleged negligent infliction of emotional distress against Witkowski, Jr., Stewart, and the town.

On April 5, 2013, the defendants filed a motion to strike all but the negligence counts. Specifically, the defendants argued that the counts alleging common-law recklessness against the individual defendants should be stricken because they failed to set forth allegations of conduct that would give rise to a finding of recklessness. Further, the defendants argued that the counts sounding in negligent infliction of emotional distress should be stricken because such a cause of action cannot arise from allegations of damage to property only. The plaintiffs filed an opposition to the motion to strike alleging that all causes of action were sufficiently pleaded given those allegations that were expressly pleaded as well as those necessarily implied.

The court, *Frechette, J.*, issued an order denying the motion to strike as to the recklessness counts, but granting the motion as to those counts alleging negligent infliction of emotional distress. The court stated in its order that "[t]aken as admitted, the plaintiff's allegations of recklessness are sufficient." The court nevertheless agreed "with the vast majority of Superior Court decisions which hold that Connecticut does not recognize a cause of action for negligent infliction of emotional distress arising solely out of a property damage claim."

On June 4, 2013, the plaintiffs filed the operative second amended complaint, in which, among other things, they repleaded their counts alleging negligent infliction of emotional distress. The defendants filed a revised answer on February 27, 2014, in which they raised special defenses of contributory negligence, governmental immunity, and failure to mitigate damages.

A certificate of closed pleadings and a claim for the trial list was filed on May 4, 2015.

On October 30, 2015, the defendants filed the motion for summary judgment underlying the present appeal. The defendants submitted a supporting memorandum of law, attached to which were partial transcripts from the depositions of Helen Northrup and the individual defendants, as well as an affidavit by Stewart. The defendants argued that the negligence counts, including those alleging negligent infliction of emotional distress, were barred by governmental immunity because they involved acts or omissions that required the exercise of judgment or discretion, and no other recognized exception to governmental immunity applied. The defendants further argued that the recklessness counts brought against the individual defendants also failed as a matter of law because, on the basis of the allegations and evidence presented, no reasonable fact finder could determine that the individual defendants had engaged in demonstrably reckless conduct.

The plaintiffs filed an objection to the motion for summary judgment on November 18, 2015, arguing with respect to the negligence counts that there remained genuine issues of material fact as to whether the defendants were exercising ministerial or discretionary duties and, if discretionary, whether the identifiable person-imminent harm exception to governmental immunity applied. With regard to the recklessness counts, the plaintiffs argued that a genuine issue of material fact exists as to whether the conduct of the individual defendants rose to the level of recklessness. The plaintiffs attached a number of exhibits to their objection, including portions of the deposition testimony of Helen Northrup, Stewart, and Witkowski, Jr.; an affidavit from Helen Northrup; a copy of the "October, 2009 Stormwater Management Report for the Nettleton Avenue Neighborhood"; a copy of chapter 16, article II, § 16-32 of the town's code of ordinances; Witkowski, Jr.'s and Stewart's answers to the plaintiffs' interrogatories; and copies of sewer back-up reports and citizen complaints regarding problems at nearby properties. The defendants filed a reply memorandum.

Oral argument on the motion was heard by the court, *Blue*, *J.*, on January 4, 2016. During argument regarding whether there were sufficient facts in evidence to submit the recklessness counts to a jury, the court asked the plaintiffs' counsel whether he knew of "any case in Connecticut or elsewhere where a town or town official has been held liable in recklessness" in a situation similar to the present case. Counsel answered in the negative, but asked for an opportunity to submit a supplemental brief addressing the court's question. The court agreed, with the consent of the defendants' counsel, and continued the matter to January 19, 2016, for supplemental argument on the recklessness counts. The

plaintiffs submitted their supplemental brief on January 8, 2016, and the defendants filed a brief in response on January 15, 2016. Argument on the motion for summary judgment resumed on January 19, 2016.

On January 20, 2016, the court issued a memorandum of decision granting summary judgment in favor of the defendants on all counts. With respect to the negligence counts, including those counts alleging negligent infliction of emotional distress, the court concluded that the plaintiffs' specifications of negligence amounted to a "litany of discretionary omissions" and that their "allegations boiled down to a claim that the defendants failed to perform their municipal duties in an appropriate manner." The court determined that the city ordinance on which the plaintiffs relied in opposing summary judgment only set forth the general duties of the street department without any specific directions or mandates as to how those duties should be discharged. Accordingly, the court concluded that the defendants' acts or omissions in maintaining the town's drainage system were discretionary in nature. Furthermore, the court concluded that the identifiable person-imminent harm exception to discretionary act immunity was inapplicable as a matter of law because the risk of the property flooding at any given time was indefinite and, thus, did not constitute an imminent harm. The court also granted summary judgment with respect to the recklessness counts, concluding that they also were barred by governmental immunity.

The plaintiffs filed a motion to reargue and for reconsideration, which the defendants opposed. The court denied the plaintiffs' motion, and this appeal followed.

We begin with the standard of review we employ in appeals challenging a court's decision to grant summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion

for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 221–22, 131 A.3d 771 (2016).

We turn next to the law governing municipal liability and the liability of municipal agents, which is well settled. At common law, a municipality generally was immune from liability for its tortious acts. *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003). As our Supreme Court has recognized, however, "governmental immunity may be abrogated by statute." (Internal quotation marks omitted.) Id. General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." This language "clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents." (Internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 223.

Subdivision (2) of § 52-557n (a), however, sets forth two express and significant limitations on the statute's general abrogation of governmental immunity. Relevant to the present appeal is the following: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ." General Statutes § 52-557n (a) (2) (B). "The statute, thus, distinguishes between discretionary acts and those that are ministerial in nature, with liability generally attaching to a municipality only for negligently performed ministerial acts, not for negligently performed discretionary acts." *DiMiceli* v. *Cheshire*, supra,162 Conn. App. 224.

"Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune

from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 614–15, 903 A.2d 191 (2006).

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . In order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner. . . .

"In general, the exercise of duties involving inspection, maintenance and repair of hazards are considered discretionary acts entitled to governmental immunity. . . . A municipality necessarily makes discretionary policy decisions with respect to the timing, frequency, method and extent of inspections, maintenance and repairs. . . . Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where [such a determination] is apparent from the complaint. . . . [W]hether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 224–25.

Even if a municipal defendant's conduct is discretionary in nature, our courts have identified three exceptions to discretionary act immunity. "Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. . . . First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to

the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, supra, 279 Conn. 615–16. With these general principles in mind, we turn to the plaintiffs' claims on appeal.

I

The plaintiffs first claim on appeal that the court improperly determined as a matter of law that the defendants were entitled to governmental immunity on all counts because the acts or omissions of which the plaintiffs complained were discretionary in nature rather than ministerial. We disagree.

In arguing that the alleged negligent acts or omissions of the defendants in the present case were ministerial in nature rather than discretionary, the plaintiffs rely upon § 16-32 of the town's code of ordinances and our Supreme Court's decision in *Spitzer* v. *Waterbury*, 113 Conn. 84, 154 A. 157 (1931). We are not persuaded, however, that any language found in § 16-32 imposes a ministerial duty on the defendants with respect to maintaining and repairing the town's storm water drainage systems or that the language the plaintiffs have culled from the discussion in *Spitzer* necessarily supports a contrary conclusion. We address each argument in turn.

A

As previously set forth, our courts consistently have adhered to the principle that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion. See *Violano* v. *Fernandez*, 280 Conn. 310, 323, 907 A.2d 1188 (2006); *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989); *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 224–25; *Grignano* v. *Milford*, 106 Conn. App. 648, 659–60, 943 A.2d 507 (2008). In the present case, the plaintiffs argue that § 16-32 of the town's code of ordinances, which assigns responsibility for the care, management, and maintenance of the town's storm water drainage system to the town's street commission, contains such language. Specifically, the plaintiffs insist that § 16-32 imposed a ministerial duty on the defendants to keep the storm drains and drainage pipes near their property in a safe and operable condition, and their failure to exercise that duty in a reasonable manner led to the flooding of the plaintiffs' property.

Section 16-32 of the town's code of ordinances provides as follows: "Except as otherwise provided in this article, the streets commission shall be responsible for the care and management of all streets, avenues, high-

ways, alleys and bridges, and the opening, grading improving, repairing and cleaning of the same; of the construction, protection, repair, furnishing, cleaning, heating, lighting and general care of all public streets and appurtenances, except such as are by the express terms of the Charter under the control of some other officer or department; of the construction, repair, cleaning and general care of all drains, culverts, sluiceways and catch basins, and the collection and disposing of ashes, garbage and refuse. The streets commission shall make all suitable rules and regulations in regard to the department and the conduct of its business."[5] Naugatuck Code of Ordinances, c. 16, art. II, § 16-32.

It is indisputable that the ordinance places the responsibility of cleaning, maintaining and repairing the town's catch basins and other elements of the storm water sewer squarely in the hands of the streets commission. The plaintiffs, however, have not alerted us to, nor have we identified on the basis of our own review, any language in § 16-32 of the town's code of ordinances that mandates the manner in which the streets commission, the town, or any of its municipal employees should endeavor to meet this responsibility. The day-to-day decision-making regarding when and how to direct town resources in furtherance of the duty to keep the storm water systems up-to-date and working properly necessarily is left to the judgment and discretion of street commission officials and employees. See *Grignano* v. *Milford*, supra, 106 Conn. App. 656 ("[a] municipality necessarily makes discretionary policy decisions with respect to the timing, frequency, method and extent of inspections, maintenance and repairs").

"There is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions." *Bonington* v. *Westport*, 297 Conn. 297, 308, 999 A.2d 700 (2010). This court's decision in *Grignano* v. *Milford*, supra, 106 Conn. App. 648, in which this court affirmed the granting of summary judgment in favor of the defendant town, is illustrative of this point. The plaintiff in *Grignano* asserted that language in a town ordinance created a ministerial duty requiring the defendant town to perform reasonable and proper inspections and maintenance activities on the premises where the plaintiff had fallen and been injured. Id., 656. This court concluded to the contrary that the defendant's exercise of that duty was discretionary because the ordinance did not prescribe the frequency of or the manner in which the defendant was to perform inspection and maintenance. Id., 656–57.

Similarly, in *DiMiceli* v. *Cheshire*, supra, 162 Conn. App. 219, the plaintiffs appealed from a summary judgment rendered on their complaint alleging that the defendant town had negligently exercised its ministerial duty to maintain a town park and seesaw, on which

the plaintiff child was injured. In support of their argument that the town's duty was ministerial rather than discretionary, the plaintiffs cited to, inter alia, a provision in the town's code of ordinances. Id., 225. The town ordinance at issue provided that "[t]he town's parks and recreational facilities shall be maintained for the residents of Cheshire and guests in their company." (Internal quotation marks omitted.) Id., 226. This court agreed with the trial court that the ordinance did not impose a ministerial duty on the town because it did not mandate the manner in which the town was supposed to conduct maintenance. Because those decisions were left to the judgment and discretion of municipal employees, the town was entitled to discretionary act immunity. Id., 226, 229.

Turning back to the present case, although there is language in § 16-32 of the town's code of ordinances that requires the streets commission to maintain and repair the town's storm water sewer system, the ordinance contains no provisions that mandate the time or manner in which those responsibilities are to be executed, leaving such details to the discretion and judgment of the municipal employees.

B

Despite the absence of any language limiting the discretion of the defendants, the plaintiffs nevertheless argue on the basis of language from our Supreme Court's decision in *Spitzer* v. *Waterbury*, supra, 113 Conn. 85, that there remains a genuine issue of material fact as to whether the defendants' duty was discretionary in nature. We are unconvinced that *Spitzer* undermines our analysis in part I A of this opinion, because the language on which the plaintiffs rely is dicta and subsequent Supreme Court cases since *Spitzer* have refined and clarified the appropriate analysis to apply when determining whether acts or omissions of a municipality are discretionary or ministerial for purposes of determining governmental immunity. Accordingly, we conclude that *Spitzer* does not support the weight placed upon it by the plaintiffs.

In *Spitzer*, as in the present case, the plaintiff property owners sued the defendant city after the city's storm water sewer overflowed from a nearby catch basin and flooded their cellar, causing damage. *Spitzer* v. *Waterbury*, supra, 113 Conn. 85. The trial court ruled against the property owners and in favor of the defendant city on the two counts of negligence, and the Supreme Court affirmed that judgment on appeal. According to the Supreme Court, the appeal was limited to "the correctness of the court's conclusion that the city was not liable for the damage resulting from its failure to provide an outlet of sufficient size to carry off the water, which was discharged into [a] covered stream after the rainfall . . . ." Id., 85–86. In other words, the issue was not about whether catch basins

were properly maintained and cleaned regularly so as to handle above ordinary rainfall, but whether the catch basin system as it was planned could handle even ordinary amounts of rain.

In resolving that issue, the Supreme Court reasoned that "if the plan adopted by the city failed to provide an outlet of sufficient size to carry off the surface water which might reasonably be expected to accumulate under ordinary conditions, with the result that the water thus collected was discharged in a body upon the plaintiffs' property, the city could not escape liability for the resulting invasion of the plaintiffs' rights upon the plea that it was acting in the discharge of a governmental duty. . . . If, however, the drains and sewers of a municipality are amply sufficient to meet all demands upon them under ordinary conditions, the municipality is not liable because they may prove inadequate to carry off the surplus water from an extraordinary storm or flood. . . . An extraordinary storm is not necessarily an unprecedented one, but one that happens so rarely that it is unusual and not ordinarily to be expected." (Citations omitted.) Id., 90.

The Supreme Court cited to the trial court's unchallenged findings that the rainfall that caused the flooding of the Spitzers' property was unusual and unprecedented and that the storm water system in the area was of a sufficient size and construction to handle an ordinary rainfall. Id. According to the Supreme Court, those findings were "decisive, adverse to the plaintiffs' contention, as to the liability of the city, either on the ground of negligent construction or of a direct invasion of the plaintiffs' rights by reason of a defective plan of construction." Id., 90–91.

The claims of negligence at issue in *Spitzer* did not involve claims that municipal employees had failed to maintain the city's storm water system properly, or failed to correct or ignored problems brought to their attention by property owners, and, therefore, the case is factually distinguishable. Despite the fact that the defendant municipality prevailed in *Spitzer*, the plaintiffs here nevertheless direct our attention to the following passage, which they contend supports their assertion that discretionary act immunity should not apply in the present case. In discussing a municipality's general duty to construct a storm water system, which was not at issue in *Spitzer*, the Supreme Court observed that a city is "bound to exercise due care in the construction of its storm water sewers, and would be liable for its failure to do so, though the work was done in the performance of a public and governmental duty. . . . The work of constructing drains and sewers, *as well as that of keeping them in repair*, is ministerial, and the municipality is responsible for negligence in its performance." (Citations omitted; emphasis added.) Id., 88.

There is no further discussion or analysis in *Spitzer* regarding the nature of a municipality's duty to keep a drainage system in good repair. The court does not discuss, for example, whether the exercise of discretion or judgment was needed to meet the municipality's obligation, a touchstone now in determining whether a duty is ministerial in nature. *Violano* v. *Fernandez*, supra, 280 Conn. 318. Moreover, the language was superfluous to the issue before the court and unnecessary to the court's holding. This language from *Spitzer* has not been relied upon or cited favorably in any recent appellate cases in which the court was tasked with deciding whether a municipality had a discretionary or ministerial duty. We view the highlighted language as nothing more than dicta, which is not binding on this court.[6] See *State* v. *DeJesus*, 288 Conn. 418, 454 n.23, 953 A.2d 45 (2008).

Furthermore, in *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 41 A.3d 1147 (2012), this court, in addition to distinguishing *Spitzer* on its facts, suggested that *Spitzer* was no longer broadly applicable in distinguishing between ministerial and discretionary acts. The plaintiffs in *Silberstein* were homeowners who lived in a neighborhood association and private tax district, and they filed a negligence action against the association and tax district alleging that they had failed to maintain the roads and drainage systems in the neighborhood, resulting in periodic flooding of the homeowners' properties. Id., 265. The trial court determined that the duty to maintain the roads, storm drains, and sewers was discretionary in nature and granted summary judgment for the defendants on the basis of governmental immunity. Id., 266. In affirming the judgment of the trial court, this court discussed the *Spitzer* language, and noted, "[s]ince *Spitzer*, our Supreme Court has refined its analysis of the relationship and differences between ministerial and discretionary acts to determine [questions of municipal liability]." Id., 272. We agree with that analysis.

As we have already indicated, there is now a well-established legal distinction "between laws that impose general duties on officials and those that mandate a particular response to specific conditions." Id., 273. Under our existing jurisprudence, a ministerial duty on the part of a municipality or its agents ordinarily will be found only if some municipal ordinance, rule, policy, or other official directive clearly compels a prescribed manner of action that does not involve the exercise of judgment or discretion. See *Coley* v. *Hartford*, 312 Conn. 150, 161–62, 95 A.3d 480 (2014); *Bonington* v. *Westport*, supra, 297 Conn. 310–11; *Violano* v. *Fernandez*, supra, 280 Conn. 323.

Considered in light of our modern case law analyzing qualified governmental immunity, we are convinced that the court correctly determined that there was no

genuine issue of material fact to be resolved with respect to whether the alleged negligent acts or omissions of the defendants were discretionary in nature and, thus, subject to immunity. Accordingly, we reject the plaintiffs' claim.

## II

The plaintiffs next claim that, even if the defendants' actions were discretionary in nature, the court improperly concluded that the identifiable person-imminent harm exception to governmental immunity did not apply to the flooding of their property because the plaintiffs were not subject to imminent harm. We disagree.

"The imminent harm exception to discretionary act immunity [for municipalities and their employees] applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable [person]; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that [person] to that harm. . . . [Our Supreme Court has] stated previously that this exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." (Internal quotation marks omitted.) *Strycharz* v. *Cady*, 323 Conn. 548, 573–74, 148 A.3d 1011 (2016).

In *Haynes* v. *Middletown*, 314 Conn. 303, 101 A.3d 249 (2014), our Supreme Court reexamined and clarified our jurisprudence with respect to the principle of imminent harm. The court emphasized that in determining whether a harm is "imminent," it should focus on "the *magnitude of the risk* that the condition created" not "the *duration* of the alleged dangerous condition." (Emphasis in original.) Id., 322. This court later explained that "when the court in *Haynes* spoke of the magnitude of the risk . . . it specifically associated it with the *probability* that harm would occur, not the foreseeability of the harm." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Williams* v. *Housing Authority*, 159 Conn. App. 679, 704–705, 124 A.3d 537, cert. granted on other grounds, 319 Conn. 947, 125 A.3d 528 (2015). "[T]he likelihood of the harm must be sufficient to place upon the municipal defendant a 'clear and unequivocal duty' . . . to alleviate the dangerous condition." (Citation omitted.) Id., 706. In other words, "the probability that harm will occur must be so high as to require the defendant to act immediately to prevent the harm." (Emphasis omitted.) Id., 706.

The instances of flooding in the present case occurred eight times over the course of four years, from 2009 to 2012. There is no indication in the record about the number of rainfalls that occurred each year, but it would

strain credulity to imagine the plaintiffs' property flooded each time it rained, a fact that was never asserted by the plaintiffs. In fact, the evidence suggests that the flooding at issue occurred during periods of greater than usual rainfall, when the catch basins in the area either were filled with snow and ice or otherwise blocked by debris. Although the possibility of damaging flooding to the plaintiffs' property arguably should have been apparent to the defendants given the property's history, the overall probability that conditions necessary to cause flooding would occur at any particular time was relatively low. Accordingly, the court properly determined that the plaintiffs could not demonstrate imminent harm.

Our conclusion finds support in our case law. In discussing imminent harm in *Haynes*, the Supreme Court discussed our decision in *Silberstein* v. *54 Hillcrest Park Associates*, *LLC*, supra, 135 Conn. App. 262, which also involved a claim of repeated flooding during periods of heavy rainfall over the course of several years. The Supreme Court observed in *Haynes* that the risk of harm in *Silberstein* was not imminent "because it was not apparent to the municipal defendant that the risk of harm was so great that the defendant's duty to act immediately to prevent the harm was clear and unequivocal." *Haynes* v. *Middletown*, supra, 314 Conn. 322 n.14. In other words, because there was not a high probability that damaging flooding would occur at any particular time, there was no clear and urgent need for action on the part of the defendants.

Furthermore, our Supreme Court's decision in *Bonington* v. *Westport*, supra, 297 Conn. 297, also supports our conclusion that the harm at issue in the present case was not imminent harm for purposes of the identifiable person-imminent harm exception. The court in *Bonington* rejected the plaintiff landowners' argument that the risk of flooding caused by excess surface water runoff during periods of significant rainfall was an imminent harm. The court indicated that such a risk fell "short of the limited circumstances under which imminent harm may be established." Id., 314. As the court explained: "Although the plaintiffs' property undoubtedly constitutes a discrete place, and rainfall inevitably would occur at that site at some point in the future, a significant rainfall causing excessive surface runoff necessarily would occur at an indefinite point in time. Such harm is not imminent." Id., 315.

Consistent with *Bonington*, we conclude that the risk at issue here did not rise to imminent harm under the test established in *Haynes*. Accordingly, the court properly rejected the plaintiffs' claim that the identifiable person-imminent harm exception was applicable under the facts of this case.

III

Finally, the plaintiffs claim that the court improperly raised sua sponte whether the plaintiff's allegations of recklessness directed against the individual defendants could be maintained against them as a matter of law, and ultimately decided adversely to the plaintiffs that the counts alleging recklessness against the individual defendants were barred by governmental immunity. For the reasons that follow, we affirm the court's decision to grant summary judgment on these counts, albeit on the basis of an alternative ground briefed by the parties. See *Diamond 67, LLC* v. *Oatis*, 167 Conn. App. 659, 679–80, 144 A.3d 1055 (appellate court may affirm judgment on dispositive alternative ground for which there is support in trial court record and provided parties not prejudiced or unfairly surprised by consideration of issue), cert. denied, 323 Conn. 927, 159 A.3d 229 (2016).

In their motion for summary judgment, the only basis for summary judgment asserted by the defendants with respect to the counts alleging recklessness was that there was no evidence that the individual defendants engaged in reckless behavior and that no genuine issue of material fact existed with respect to that issue. The court, however, later raised sua sponte and asked for briefing on whether claims of recklessness against a municipality or its agents could be maintained as a matter of law. In reaching its conclusion, it appears that the court made a subsidiary determination that the plaintiffs had sued the individual defendants only in their official capacities as town employees and that claims of reckless conduct against a municipality directly or against town officials in their official capacity are not legally cognizable because of governmental immunity. See General Statutes § 52-557n (a) (2) (A) (municipality not liable for personal injury or property damages for "[a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct); *Pane* v. *Danbury*, 267 Conn. 669, 685, 841 A.2d 684 (2004) (holding that concepts of wilful, wanton or reckless conduct indistinguishable for purposes of § 52-557n [a] [2] [A]); *Himmelstein* v. *Bernard*, 139 Conn. App. 446, 456, 57 A.3d 384 (2012) ("well settled law that an action against a government official in his or her official capacity is not an action against the official, but, instead is one against the official's office and, thus, is treated as an action against the entity itself" [internal quotation marks omitted]).

The plaintiffs argue on appeal that the court should have limited itself to the issues raised in the motion for summary judgment, but that even if the court properly considered the issue it raised sua sponte, it incorrectly decided that the plaintiffs had sued the individual defendants only in their official capacities, and that governmental immunity therefore barred these claims.

The defendants respond that the trial court properly

raised and considered whether the plaintiffs' counts alleging recklessness against the individual defendants were legally cognizable, but also argue as an alternative ground for affirmance that, even if they were, the counts also fail as a matter of law because there is no evidence from which to conclude that the individual defendants engaged in reckless or wanton misconduct.

We believe that it is unwise for us to decide whether the individual defendants were sued only in their official capacity under the circumstances of this case, given the lack of findings by the trial court on that question. We conclude on the basis of our plenary review of the pleadings and evidentiary submissions in support and in opposition to summary judgment that there was no factual basis for the recklessness counts and, therefore, summary judgment on these counts was proper, albeit for a different reason. Accordingly, we need not reach whether the individual defendants were sued in their personal or official capacities.

"Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. . . . More recently, we have described recklessness as a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." (Internal quotation marks omitted.) *Doe* v. *Boy Scouts of America Corp.*, 323 Conn. 303, 330, 147 A.3d 104 (2016). Reckless conduct "must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention . . . or even of an intentional omission to perform a statutory duty . . . ." W. Prosser & W. Keeton, Torts (5th Ed.) § 34, p. 214. "[In sum, reckless] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Lawrence* v. *Weiner*, 154 Conn. App. 592, 598, 106 A.3d 963, cert. denied, 315 Conn. 925, 109 A.3d 921 (2015).

We first note that the allegations of recklessness in the complaint are identical to those alleged in support

of the negligence counts. In *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 927 A.2d 312, cert. denied, 284 Conn. 927, 934 A.2d 243 (2007), this court affirmed the granting of summary judgment on counts alleging common-law recklessness because the plaintiffs had "simply incorporated their allegations of negligence and labeled the conduct recklessness." Id., 705. This court held that "[m]erely using the term 'recklessness' to describe conduct previously alleged as negligence is insufficient as a matter of law." Id.; see also *Dumond* v. *Denehy*, 145 Conn. 88, 91, 139 A.2d 58 (1958) ("[t]here is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on" [internal quotation marks omitted]). Although we must acknowledge that it is possible for an allegation of negligence to sometimes also describe reckless conduct, the plaintiffs' allegations in the present case cannot reasonably be characterized as rising above mere negligence. Even accepting all allegations as true, they do not, as a matter of law, support submitting the recklessness counts to a jury, and, therefore, summary judgment in favor of the individual defendants is appropriate.

Generally, the plaintiffs allege that the individual defendants failed to maintain and keep the storm drainage system in a reasonably operative condition, and that they had notice of the flooding that was occurring in the Nettleton Avenue area but failed to warn the plaintiffs and adopted a laissez faire attitude in addressing the situation. There is no evidence in the summary judgment record, however, that the defendants were aware of any existing drainage problem specifically involving the plaintiff's particular property prior to the first reported incident of flooding. Furthermore, there is no evidence that the flooding in the neighborhood involved a situation of such a high degree of danger that the failure to take immediate action to prevent its recurrence demonstrated a conscious disregard for the safety of the plaintiffs' or the neighborhood generally. Although the plaintiffs' frustration with what they viewed as ineptness and a lack of urgency by the town and the individual defendants to alleviate the flooding situation in their neighborhood is understandable, there is nevertheless undisputed evidence that some action was taken to improve the drainage in the Nettleton Avenue area, albeit perhaps insufficient and not before additional flooding occurred. The record simply cannot support a finding that any of the individual defendants acted or failed to act with the type of wanton disregard that is the hallmark of reckless behavior. Moreover, in opposing summary judgment on the recklessness counts, the plaintiffs failed to submit any evidence that would alter that conclusion. Once the defendants established that no genuine issue of material

fact existed that the recklessness allegations were unsupported by evidence, the burden shifted to the plaintiffs to produce that evidence. They failed to do so. Accordingly, the defendants were entitled to summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Helen Northrup also brought the action as next friend on behalf of her minor son, Timothy Northrup.

[2] Through 2009, the superintendent of streets was the official responsible for the care and management of the town's streets. After 2009, it became the responsibility of the town's department of public works.

[3] We refer to Witkowski, Jr., Stewart, and Mezzo collectively as the individual defendants.

[4] In their complaint, the plaintiffs define "black water" as surface rainwater that overwhelms and causes a back-up in the sanitary sewer system, resulting in flood waters that contain sewage and other contaminants.

[5] The plaintiffs have not directed us to any rules or regulations that were promulgated in accordance with the ordinance or to any other written internal policies or standards in place regarding the defendants' duty to inspect or maintain the storm water sewers. In their brief, however, the plaintiffs quote a portion of Witkowski's deposition testimony in which he states that there was a schedule in place to "make sure" that all single catch basins were "maintained at least once in the course of a year." After oral argument of the appeal, the plaintiffs filed a supplemental authority letter pursuant to Practice Book § 67-10 raising, for the first time, our decision in *Wisniewski* v. *Darien*, 135 Conn. App. 364, 42 A.3d 436 (2012). The *Wisniewski* decision was not discussed or cited by the plaintiffs in their opposition to summary judgment, in their motion to reargue or in their briefs to this court. Accordingly, the defendants were never provided an opportunity to discuss this case or its applicability to the facts here. In any event, the *Wisniewski* holding is inapplicable to the facts of the present case.

*Wisniewski* involved a negligence action against the town of Darien and its tree warden by plaintiffs who were injured when a tree located in the town's right of way fell onto their vehicle. Id., 366. In affirming a judgment for the plaintiffs following a jury trial, this court concluded that the trial court properly had declined to set aside the verdict, concluding in part that the jury reasonably could have found that the town had a ministerial duty of inspection on the basis of the defendant tree warden's own testimony, including "that upon receipt of a complaint regarding a potentially hazardous tree, he has a nondiscretionary duty to perform an inspection." Id, 374–75. In contrast, unlike the tree warden in *Wisniewski*, Witkowski's statement is far more vague and does not come close to an admission that the town had a nondiscretionary duty in this case. The statement, on its face, simply is not one from which a ministerial duty reasonably could be inferred and, thus, does not raise a genuine issue of material fact for a jury.

[6] At least one decision from a trial court that has considered this language also has reached the conclusion that the language in question is dicta. See *Blade Millworks, LLC* v. *Stamford*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-5013039 (March 26, 2015) (*Hon. Taggert Adams*, judge trial referee); see also *Pyskaty* v. *Meriden*, Superior Court, judicial district of New Haven, Docket No. CV-12-6005514S (August 3, 2015) (*Fisher, J.*) (distinguishing and limiting *Spitzer*); but see *DeMarco* v. *Middletown*, Superior Court, judicial district of Middlesex, Docket No. CV-11-6006185S (April 3, 2014) (*Domnarski, J.*) (58 Conn. L. Rptr. 4) (following *Spitzer*).